## No. 415.

THE STATE OF LOUISIANA *v.* ZACK. McFARLAND.

25 547
51 1407

Where certain persons, to wit: Morrison and Pickens, pretended, the one as clerk and the other as sheriff of the parish of Caddo, to hold their offices and to exercise the functions thereof under what they called the "McEnery government," in opposition to the authority of the United States and the laws and decisions of the courts of this State;

Held—That it would seem to be absurd to require an argument to show that parties occupying such positions can not be regarded as *de facto* officers of the government whose authority they contemn.

There can not be, at the same time and in the same State, two valid State governments, with two sets of officers.

No. 41 of the acts of the Legislature, session of 1873, forbids persons occupying the position therein described from performing any official act, and also prohibits all officers of the State from recognizing them or giving effect to their acts.

"Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed." C. C. art. 12.

Every official act of Morrison and Pickens is, therefore, null and void, if they be in the category of persons declared to be usurpers in the first section of act No. 41 of 1873, and there is no doubt that they are in said category.

They do not hold office by virtue of any title. They never were declared elected by the Board of Returning Officers at the general election of November, 1872, neither have they been legally commissioned.

The documents called commissions, which they hold, purporting to have been issued on the fourth of December, 1872, are absolute nullities, having been issued in violation of law.

No one claiming an office by election in November, 1872, could have been commissioned except by acting Governor Pinchback or by Governor Kellogg, inasmuch as Governor Warmoth was suspended by being impeached by the House of Representatives before the promulgation of the returns of the election by the Returning Board, and his trial was discontinued in consequence only of the expiration of his term of office.

No one shall exercise the functions of an elective office by virtue of an election unless he has been declared elected according to existing laws; and in cases where the law requires the officers to be commissioned, until such commission shall have been issued. Neither of these prerequisites was observed in this case.

State of Louisiana v. McFarland.

· The acts of Morrison and Pickens in assuming to act as the sheriff and clerk of Caddo after the promulgation of the law aforesaid, were in flagrant violation and contravention of its statutory provisions. Such acts are crimes, and consequently can have no legal effect.

· Those who themselves have violated the law by recognizing such pretended officers, must suffer the consequences of their disobedience.

The act No. 41 of 1873 does not divest vested rights. The pretended commissions of Morrison and Pickens were mere nullities..

It is not retroactive; it is not *ex post facto* in its operations; because it professedly provides only for the future. It can not, therefore, be *ex post facto*.

It does not encroach upon the powers and duties of the judiciary. It declares certain acts, which were in themselves wrong and in violation of law and civil order *before* the passage of the statute, to be crimes if done *after* the passage of the law. There is no question that the subject is one over which the Legislature has jurisdiction.

It is not material to decide whether or not the act No. 41 of 1873 conflicted with the intrusion office act, and took from the courts cases that were pending under it, for the General Assembly has complete power over the subject of contests for office. It determines the mode by which these questions may be decided, and the courts have no jurisdiction over their discretion.

To maintain, as was strenuously urged in the case, that because Morrison and Pickens have not been prosecuted and convicted of their crimes, this court can not decide on the validity of their acts, is an absurdity.

It is not necessary to convict a thief of larceny in order to enable the court to decide that the title given by him of the stolen property was an absolute nullity, even in a suit to which the thief is not a party.

The pretended official acts of Morrison and Pickens are nullities, and therefore the bond which is the basis of this suit, as well as the proceedings had in the case while Morrison and Pickens were pretending to act as clerk and sheriff, are null and void.

A PPEAL from the Tenth Judicial District Court, parish of Caddo. *Looney,* J. *W. N. Wise,* District Attorney, for plaintiff and appellee. *Nutt & Leonard, J. M. Lauton,* for defendant and appellant.

· LUDELING, C. J. Zack. McFarland was indicted for murder at the term of the Tenth District Court, in Caddo parish, held in January, 1873. He was admitted to bail by the presiding judge. Upon the failure of McFarland to appear according to the terms of his bond, judgment was rendered against him and his b ndsmen. The sureties filed a motion to set aside the judgment *nisi.* It alleges that there is no indictment against McFarland to which he can be legally compelled to answer; that no legal warrant issued against him; that he was not arrested, and that the bond was not taken by any one legally authorized to take the same, and is, therefore, null and void; that the indictment was not found by a legal grand jury, and that even though the indictment be held to be valid (which is denied), still said McFarland can not be compelled to appear before this court at the present term, because the law prohibits him and all others, especially officers of the State, from recognizing in any manner usurpers in office, and because the offices of Clerk of said court and Sheriff of said parish are now usurped by S. M. Morrison and J. W. Pickens, pretending to act without authority of an election declared by the Returning Board constituted by law, and without commissions from the Governor of the State.

It further alleges that said "Morrison and Pickens have openly adhered to, recognized, and attempted to maintain the usurping gov-

ernment known as the McEnery Government; that they are usurpers, illegally assuming or pretending to be public officers, without any shadow or color of right, in defiance of law; and that all their acts, as such, being subversive of the government and in contravention of prohibitory laws, are absolutely null and void." The motion further represents that the Returning Board, constituted by law, has legally declared U. B. Holloway, Clerk, and A. Flournoy, Sheriff, of Caddo parish; that the Governor of the State commissioned them as such officers, and that they were duly qualified to act, long anterior to the date on which said indictment was filed, and that they were the only persons entitled in any manner to discharge the functions of their respective offices. It alleges that the Judge had no right to order Pickens to take the bond, and the said Pickens was without authority to take the bond, being forbidden by law from doing so, and that the bond is utterly null and void. It is further alleged that no judgment could have been rendered on said bond, or any other action taken thereon at that term of the court, because the offices of Clerk and Sheriff were violently usurped, and the lawful Clerk and Sheriff were prevented from discharging the duties of their offices by said Morrison and Pickens.

The motion was overruled, judgment was signed, and the sureties have appealed.

It is evident that, if the allegations made in the motion be true, the motion should have been maintained, as there can be no judicial proceedings in the District Court without a clerk and sheriff; and the allegations substantially amount to this, that, practically, the District Court of Caddo parish had neither of those officers acting when the proceedings in this case were had.

It is necessary, therefore, to decide whether or not S. M. Morrison and J. W. Pickens were, respectively, Clerk and Sheriff of Caddo parish during the time when the aforesaid proceedings occurred.

It appears that U. B. Holloway and A. Flournoy, Jr., were respectively declared elected to the offices of Clerk and Sheriff of Caddo parish by the Board of Returning Officers, and that they were duly commissioned as such, on the twenty-sixth day of December, 1872, by Acting Governor Pinchback. It is admitted that they qualified according to law.

It appears also that S. M. Morrison received what purports to be a commission, signed by Governor Warmoth, bearing the date of fourth December, 1872, although it was not received until twenty-third December, 1872. It is admitted he took the oath of office and gave bond. The same statement of facts is applicable to J. W. Pickens.

It appears that said Morrison and Pickens obtained possession of the buildings and records of the offices of clerk and sheriff, and that Hol-

State of Louisiana v. McFarland.

loway and Flournoy have been asserting their rights to their offices since the date of their commissions.

S. M. Morrison was examined as a witness in this case. He says that "he has heretofore recognized the McEnery government of the State of Louisiana, and continues so to do. My commission from Governor Warmoth as clerk was received on twenty-third December, 1872, and I qualified under it the same day." His bond is not in this record, although it was offered in evidence. But it is in another record before this court. It is executed in favor of "the Governor of the State of Louisiana," without designating who is Governor of the State.

It is admitted that J. W. Pickens would make the same statements as those made by Morrison in his testimony.

It is manifest from the foregoing statement of facts that S. M. Morrison and J. W. Pickens are pretending to hold their offices, and to exercise the functions thereof, under what they call "the McEnery government," in opposition to the authority of the United States, and the laws and decisions of the courts of this State.

It would seem to be absurd to require an argument to show that parties occupying such positions can not be regarded as *de facto* officers of the government, whose authority they contemn.

The Supreme Court of the United States held the following language in the case of Luther *v.* Borden: "If it should be decided that the charter government had no legal existence during the period of time above mentioned—if it had been annulled by the adoption of the opposing government—then the laws passed by its Legislature during that time were nullities, its taxes wrongfully collected, and the judgments and sentences of its courts in civil and criminal cases null and void, and the officers who carried their decisions into operation answerable as trespassers, if not, in some cases, as criminals." 7 How. 39.

It has, however, been strenuously contended that because the said Morrison and Pickens were in possession of the offices, in the manner already stated, they were *de facto* officers, and their acts can not be attacked collaterally, and their right to said offices can not be inquired into in this collateral way; and many authorities have been cited to show that the acts of a *de facto* officer can not be questioned in a collateral manner. A question which, at this late day, it is unnecessary to refer to authorities to support. But that argument is a complete *petitio principii.* It assumes for granted the very question at issue, to wit: were those persons *de facto* officers? The quotation from the opinion of the Supreme Court, above made, negatives that position— so does common sense. There can not be, at the same time and in the same State, two valid State governments, with two sets of officers. That Flournoy, who was declared elected by the Returning Board, and who was commissioned by Acting Governor Pinchback, and who

State of Louisiana v. McFarland.

qualified according to law, was Sheriff of Caddo parish at the date when McFarland was pretended to be arrested, the fourteenth of March, 1873, will not be disputed by any unbiased lawyer. An arrest by Flournoy, on that day, would unquestionably have been legal. If Pickens also was Sheriff, there were then two Sheriffs of Caddo. The proposition is absurd.

It is notorious that in the winter and spring of 1873, in certain localities of this State, the adherents of Colonel McEnery were in a position to obstruct the administration of justice by preventing those whom the Returning Board of elections had declared elected from exercising the functions of their offices, except with great danger of civil commotion. The General Assembly, then in session, passed, in the interest of public order and of the peace of society, the act No. 41. The title of the act unequivocally indicates the intention of the lawgiver—it is "an act declaring it a crime to usurp a public office, and providing the punishment for such offense; providing that if any public officer shall adhere to or recognize any usurper, his office shall be forfeited and considered abandoned, and directing and regulating legal proceedings to have such abandonment and forfeiture declared; authorizing the Governor to declare such forfeiture and abandonment in certain cases, and to remove such officers, and to fill the vacancies so made by appointment."

The first section of the act declares "that if any person shall assume or pretend to be an officer of the State—executive, judicial or legislative—without authority of an election declared by the Returning Board, or without authority of a commission from the Governor of the State, in case the laws require such officer to be commissioned, such person so illegally assuming or pretending to be a public officer shall be deemed a usurper. If any such usurper shall attempt to exercise the functions of a public officer, and shall interfere with any public officer in the discharge of his duties, such usurper so interfering shall be deemed to be guilty of a crime, and upon conviction may be fined or imprisoned, at the discretion of the court, or both." The second section declares that "if any public officer shall give adhesion to, or in any manner recognize, the authority of any person who may be usurping a publice office, within contemplation of this law, such public officer so giving adhesion to or recognizing such usurper shall be deemed to have forfeited and abandoned the public office held by him, under the constitution, the laws, and the government of the State."

Whether the penalties denounced against officers of the State who may recognize the authority of persons declared to be usurpers by the statutes can be enforced or not, it is not material to determine now.

It is sufficient, for the purposes of this case, to know that the law

forbids persons, occupying the position aforesaid, from performing any official act; and also prohibits all officers of the State from recognizing them or giving effect to their acts.

"Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed." C. C., art. 12.

Every official act of S. M. Morrison and J. W. Pickins is, therefore, null and void, if they be in the category of persons declared to be usurpers in the first section of act No. 41 of 1873.

They do not hold office by virtue of any title having color of authority. They claim to have been elected at the general election of November, 1872. They never were declared elected by the board of returning officers, neither have they been commissioned. The documents called commissions, purporting to have been issued by Governor Warmoth on the fourth of December, 1872, are absolute nullities, having been issued in violation of law. This we had occasion to decide in the case of Collin v. Knoblock, and in other cases decided at the last term of this Court, at New Orleans.

We will notice, judicially, that no one claiming an office by election in November, 1872, could have been commissioned, except by acting Governor Pinchback or by Governor Kellogg, inasmuch as Governor Warmoth was suspended by being impeached by the House of Representatives before the promulgation of the returns of the election by the Returning Board, and that his trial was discontinued in consequence of the expiration of his term of office.

These facts form a part of the history of this State. It was impossible, therefore, for him to have issued commissions while he was suspended from discharging the duties of his office.

But it is hardly necessary to consider the commissions, even if they can be regarded as commissions, inasmuch as the law No. 41 declares that no one, by virtue of an election, shall exercise the functions of the office until "declared elected by the Returning Board constituted by law. The obvious meaning of the words "if any person shall assume or pretend to be an officer of the State, executive, judicial or legislative, without authority of an election declared by the Returning Board constituted by law, or without authority of a commission from the Governor of the State, in case the law requires such officer to be commissioned," is, that no one shall exercise the functions of an elective office, by virtue of an election, unless he has been declared elected according to existing laws; and in cases where the law requires the officer to be commissioned, until such commission shall have been issued.

In the case of Morrison and Pickens it was necessary that they should have been declared elected by the Returning Board and commissioned according to law.

Neither of those prerequisites was done in the case of Morrison and Pickens; and their acts, in assuming to act as the sheriff and clerk of Caddo parish after the promulgation of the law, are in flagrant violation and contravention of statute No. 41. Such acts are crimes under the provisions of the statute, and consequently can have no legal effect; and those who themselves have violated the law by recognizing such pretended officers, must suffer the consequences of their disobedience.

Is the law constitutional? The objections urged against the law in argument were that it divested vested rights; that it is retroactive and *ex post facto* in its operations, and that it encroaches upon the powers and duties of the judiciary.

There is no force in the objections urged.

No one has, or ever had, a right to take possession of an office, except in the manner and under the conditions stipulated by law. Not having been declared elected by the officers whose province it was, under the law, to determine that question, and never having been commissioned according to law, Morrison and Pickens were usurpers before the passage of act No. 41. They had neither a vested right to the offices, nor any other kind of right thereto, as it does not appear that they contested the election; and they had no title under which they could nave contested for the office under the intrusion into office act—their pretended commissions being mere nullities. Bonner *v.* Lynch, 25 An.

The law is not retroactive—it professedly provides only for the future. It can not, therefore, be *ex post facto.*

Neither does the statute trench upon the jurisdiction of the judiciary. It declares certain acts, which were in themselves wrong and in violation of law and civil order before the passage of the statute, to be crimes if done after the passage of the law.

That the subject was one over which the Legislature had jurisdiction can not be questioned seriously. It was to punish those who were conspiring against the Government by preventing the installation of its officers duly declared to be elected and commissioned. Any government which would fail to do that would be pusillanimous and unworthy the respect of a free poople. If the effect of the passage of the statute be to drive those usurpers from the offices which they unlawfully retained from the legal officers, the law will have accomplished its object without any violation of right or of the constitution. It was urged, also, that this law conflicted with the intrusion into office act, and took from the courts cases that were pending under it. It is not material to decide whether it did so or not, for the General Assembly has complete power over the subject of contests for office. It determines the mode by which those questions may be decided, and

the courts have no jurisdiction over their discretion. Bonner *v.* Lynch, Cooley's Const. Lim. 174.

It was also strenuously argued that until Morrison and Pickens had been prosecuted and convicted of their crimes, the courts could not collaterally decide that they were usurpers under the statute. Thus, in this case, according to that view, the sureties on the bond upon which judgment is asked can not allege and show that there exists no obligation against them, inasmuch as the indictment, the warrant, the arrest, and the bond given in the case of The State *v.* McFarland, were absolute nullities and without effect, in consequence of the fact that Morrison, who pretended to act as clerk of the court in which said proceedings were had, and Pickens, who pretended to act as sheriff in said proceedings, were usurpers, and were acting in defiance of act No. 41, because Morrison and Pickens have not been convicted of their crimes; that is, that we can not decide the very matter at issue, to wit: Are the acts of Morrison and Pickens nullities, or are they valid? The proposition is absurd.

It is not necessary to convict a thief of larceny in order to enable the court to decide that the title given by him of the stolen property was an absolute nullity, even in a suit to which the thief is not a party.

We think the statute No. 41 of the General Assembly of 1873 is, so far as applicable to this case, valid and obligatory upon all citizens. The pretended official acts of S. M. Morrison and J. W. Pickens are nullities, and therefore the bond, which is the basis of this suit, as well as all the proceedings had in the case while Morrison and Pickens were pretending to act as clerk and sheriff, are null and void.

It is therefore ordered and adjudged that the judgment and proceedings in this case be declared null and void, and that the proceedings be dismissed.